Filed 8/11/16  P. v. Hargrove CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AARON CHRISTOPHER HARGROVE,<br><br>    Defendant and Appellant. | C078445<br><br>(Super. Ct. No. 13F02462) |

Defendant Aaron Christopher Hargrove appeals from his conviction for drug possession while incarcerated and challenges the jury finding true he had two prior strikes.  (Pen. Code, §§ 4573.6, 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)[1] Defendant contends the trial court erred in ruling he was not entitled to additional discovery of the pretrial oral discussion between the prosecutor and the People's witness

---

[1]    Undesignated statutory references are to the Penal Code.

Ronald Freitas, the deputy district attorney who prosecuted Hargrove's prior convictions. The People concede the error, but argue it was harmless.

Defendant also argues his right to a fair trial was violated by improper and prejudicial testimony from Freitas and contends the trial court erred in refusing to grant a mistrial. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, defendant was charged with possessing half a gram of heroin while incarcerated in state prison and having two prior convictions in 1999 for first degree murder and gang activity. (§§ 4573.6, 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) At defendant's request, the trial court bifurcated the drug charges and the trial on his priors. In September 2014, a jury convicted defendant of the possession charge, but the trial court mistakenly released the jury without considering the prior strike allegations.

A jury trial on the prior strike allegations was held in December 2014. The People presented a "969b packet," which included two abstracts of judgment, a photograph of defendant, and a fingerprint card for defendant. (§ 969b; Evid. Code, § 1530.) The prosecutor explained the contents of the 969b packet during her closing argument. After one and a half days deliberation, the jury was deadlocked and the court declared a mistrial.

A second jury trial on the strike allegations was held in January 2015. Before trial, the prosecutor disclosed to defendant via e-mail the People intended to call Freitas as a witness. Defendant moved for pretrial discovery of the oral discussions between the prosecutor and Freitas. The prosecutor explained to the trial court he spoke with Freitas and confirmed Freitas remembered defendant's 1999 proceedings. During their conversation, Freitas "described . . . some of the underlying facts of the murder trial," and confirmed his availability to testify. The prosecutor also explained to the trial court he and Freitas were law school classmates and had interned together at the public defender's office. Defendant requested the prosecutor provide "a recitation of the phone

2

call and conversations" with Freitas, and the prosecutor replied he did not have any written summaries of his conversation with Freitas. The court concluded the prosecutor was not required to create a written summary and denied defendant's request for additional discovery.

During trial, the People submitted the same 969b packet as before and called Freitas as a witness. After establishing Freitas prosecuted defendant's alleged 1999 convictions, the current prosecutor asked, "Do you recall, if you can, how long that trial took." Freitas responded: "I do. This was a prosecution of about 11 individuals that took place over a period of about two years. Two and a half years following the homicide itself. [¶] So [defendant] escaped from the time of the homicide and was waiting for about a year and two months."

Defendant immediately objected and the court struck Freitas's response. The court admonished the jury: "Ladies and gentlemen, as I mentioned to you, occasionally the lawyers will make an objection and I'll grant it, according to the law. If I order testimony stricken, you are to disregard it for all purposes. [¶] So the objection that I've granted was -- I don't think we have the screen here to reread it exactly, but it dealt with the nature of the length of the investigation and trial and the nature of the discussion that the witness was about to embark upon. You are to disregard that for all purposes." This admonition was in addition to the trial court's instructions given before trial began and again at the end of the trial for the jury to disregard and not consider any testimony ordered stricken from the record.

Defendant then moved for a mistrial, arguing Freitas's testimony about defendant "escap[ing]" was prejudicial and violated defendant's right to a fair trial and due process. The trial court denied the motion, reasoning the error was harmless and noting the erroneous statements had been stricken and the jury admonished, and "[t]he jury is presumed to follow my instructions." In addition, the information that defendant escaped would likely have a relatively small impact on the jury, since it already had heard

defendant was convicted of murder and gang activity. The trial court also noted the prosecution had not elicited the information and concluded Freitas misunderstood the question.

Freitas resumed testifying and confirmed the verdicts against defendant. He also identified and explained the contents of the 969b packet, including the abstracts of judgment, the dates of conviction, pronouncement of judgment date, sentencing date, and case number. Freitas also explained that he himself used 969b packets to prove up prior convictions.

The jury found true allegations defendant had two prior strikes. The trial court struck one of the strikes, pursuant to section 1385. Defendant was sentenced on the drug charges to the midterm of three years doubled, for a total of six years, to run consecutive to the sentence he was already serving of 38 years to life.

DISCUSSION

I

Defendant contends the trial court erred when it ruled the People did not have to provide defendant with a detailed written summary of the prosecutor's telephone conversation with Freitas. The People concede the error but argue it was harmless.

A prosecutor must disclose to defendant or his attorney "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial . . . ." (§ 1054.1, subd. (f).) A violation of section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, at page 836. (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.)

We consider the People's concession that the prosecutor's detailed oral summary of his conversation with Freitas failed to satisfy the requirements of section 1504.1 improvident and will say nothing further on the matter because the error is harmless under any standard. (See *Roland v. Superior Court* (2004) 124 Cal.App.4th 154, 165-166 [noting the obligation is to report any *relevant* statements to counsel made by intended

4

witnesses, and describing a " 'report' " as a " 'formal *oral* or written presentation of facts' " (italics added)].)  A section 1054.1 violation is prejudicial " 'and thus is a basis for reversal only where it is reasonably probable, by state-law standards, that the omission affected the trial result.' " (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1210-1211.)

Defendant argues he was prejudiced because the principal difference between the first and second trials on the strikes was Freitas's testimony, and the first jury was deadlocked and unable to reach a verdict.  According to defendant, Freitas's testimony merely corroborated the 969b packet and added little, except for Freitas's inflammatory and improper statements about defendant escaping.  He argues a written report of the prosecutor's conversation with Freitas could have revealed Freitas's evidence about defendant's escape, and the court could have taken appropriate steps to prevent Freitas from testifying thereto.

We are not convinced.  The prosecutor asked Freitas, simply and directly, "Do you recall, if you can, how long that trial took."  Seeming to ignore or, as the trial court concluded, misunderstand the question, Freitas volunteered a string of irrelevant circumstances to which defendant, unsurprisingly, objected.  In these circumstances, it is not reasonably likely additional discovery would have affected the trial result, especially since the prosecutor already provided an oral report and there is no foundation for concluding the prosecutor intentionally elicited or was even aware of Freitas's convoluted, irrelevant response.  In addition, despite defendant's contentions, the first and second trials were different.  While the first jury might have been confused by the 969b packet, the second jury had the benefit of the clarifications and, ultimately, focused explanations of Freitas and a different prosecutor.  It was reasonable for the second jury to be influenced by these explanations, especially since Freitas was a 25-year career prosecutor and regularly used these packets to prove up prior convictions.

5

Defendant contends his right to a fair trial was violated when Freitas testified about defendant's escape during the 1999 proceedings for the prior convictions. He argues the testimony was highly prejudicial and contends the trial court should have granted his motion for a mistrial.

We review a trial court's ruling on a motion for mistrial for abuse of discretion, and such a motion should be granted when " 'a party's chances of receiving a fair trial have been irreparably damaged.' " (*People v. Welch* (1999) 20 Cal.4th 701, 749.)

Here, it is not reasonably probable a result more favorable to defendant would have resulted absent this stricken evidence. (*People v. Welch, supra*, 20 Cal.4th at pp. 749-750; see also *People v. Watson, supra*, 46 Cal.2d at p. 836.) The jury had before it uncontradicted evidence defendant committed and was convicted of first degree murder and gang activity. That the jury also learned defendant may have escaped during proceedings for those crimes was inconsequential, especially in light of the judge's repeated admonitions against considering stricken testimony such as this. We find no error.

## DISPOSITION

The judgment is affirmed.

      NICHOLSON     , J.

We concur:

     RAYE         , P. J.

     BLEASE     , J.